UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK DOUGLAS HENDERSON,

             Petitioner,

                                    CASE NO. 12-13482

v.                                    HON. ARTHUR J. TARNOW

SHERRY BURT,

             Respondent.

_____/

**OPINION AND ORDER
DENYING THE AMENDED HABEAS CORPUS PETITION [9],
DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

      This matter has come before the Court on petitioner Frank Douglas Henderson's

*pro se* habeas corpus petition under 28 U.S.C. § 2254.  The habeas petition challenges

Petitioner's state convictions for three counts of third-degree criminal sexual conduct.

*See* MICH. COMP. LAWS § 750.520d(1)(a) (sexual penetration of a person at least thirteen

years old, but less than sixteen years old).  Petitioner is serving a sentence of fifteen to

twenty-five years.  He seeks habeas relief on grounds that he was denied his right to a

speedy trial, his trial and appellate attorneys were ineffective, and the cumulative effect

of errors deprived him of due process and a fair trial.

      Respondent Sherry Burt argues in an answer to the habeas petition that:  a portion

of Petitioner's speedy-trial claim is not cognizable on habeas review and also is meritless,

and the state appellate court's decision was not contrary to, or an unreasonable

application of, Supreme Court precedent; Petitioner's second and third claims regarding trial and appellate counsel are meritless, and the state courts' decisions were not contrary to, or an unreasonable application of, Supreme Court precedent; and Petitioner's fourth claim is procedurally defaulted, not cognizable on habeas review, and meritless.

The Court agrees that some of Petitioner's claims are not cognizable on habeas review and that the state courts' decisions were objectively reasonable. Accordingly, the petition will be denied.

## I. Background

The charges against Petitioner arose from two separate incidents that occurred in the home of the complainant's aunt in Lansing, Michigan. Petitioner was tried before a jury in Ingham County Circuit Court where the testimony established that

> Henderson was a frequent visitor at the aunt's home during the time period in question. The first assault occurred in July or August 2008. The complainant testified that Henderson came in to the room that she shared with her brother and cousin and told her that her aunt wanted to see her. However, instead of taking her to her aunt, Henderson pulled the complainant into an unoccupied bedroom, where he pushed her onto the bed, removed her clothes, and penetrated her vagina with his finger and his penis. The complainant said that Henderson stopped when one of the other children in the home at the time was seen in the doorway. The complainant, then 14 years old, did not immediately notify an adult about the encounter, but instead told her two younger relatives not to tell anyone what they had seen. At trial, the relatives testified that they had witnessed the complainant and Henderson together in a room at the aunt's home. [The complainant's] brother specifically stated that he heard his sister crying and saw Henderson moving up and down on top of her.
>
> The next incident occurred in September 2008, when the complainant again stayed at her aunt's house. When complainant learned that Henderson

would be present without any other adults at the home, she asked her older cousin to stay, but he refused. Later, Henderson tried to engage the complainant in conversation, and she tried to leave the room. He prevented her from leaving, pulled her onto the bed, pushed her clothes down, and again penetrated her vagina with his finger and his penis. Afterward, the complainant observed bleeding in her vaginal area. She did not immediately report this incident either. However, in November 2008, she eventually told her mother what had occurred, which led to an investigation and the trial at issue [here].

*People v. Henderson*, No. 297994, 2011 WL 2463566, at *1 (Mich. Ct. App. June 21, 2011.) Petitioner did not testify, but four defense witnesses testified that Petitioner was elsewhere at the time of the September 20, 2008 incident or that he was never alone with the complainant that day.

On March 19, 2010, the jury found Petitioner guilty, as charged, of three counts of third-degree criminal sexual conduct. On April 21, 2010, the trial court sentenced Petitioner as a habitual offender to three concurrent terms of fifteen to twenty-five years in prison.

Petitioner moved for a new trial on the basis that he was not tried within 180 days, as required by Michigan law. In the same motion, Petitioner requested an evidentiary hearing where medical experts could testify about the complainant's sexually transmitted infection (STI) and where Petitioner could argue that he was denied a fair trial by the trial court's refusal to admit evidence of the complainant's STI and Petitioner's lack of an infection. The trial court held oral arguments on the motion and denied it. (Mot. Hr'g, at 3-4, Oct. 19, 2010.)

In a subsequent appeal, Petitioner raised the same issues, arguing that his convictions should be overturned because the State did not bring him to trial within 180 days, as required by Michigan law, and that the trial court erred by not granting an evidentiary hearing with expert medical testimony on the complainant's STI and Petitioner's lack of infection. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, *per curiam* opinion. *See Henderson*, 2011 WL 2463566.

In an application for leave to appeal in the Michigan Supreme Court, Petitioner raised only the issue about the trial court's failure to grant an evidentiary hearing on the complainant's STI and Petitioner's lack of infection. On November 21, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Henderson*, 490 Mich. 912; 805 N.W.2d 203 (2011) (table).

On August 8, 2012, Petitioner commenced this action by filing a *pro se* habeas corpus petition and a motion to hold the petition in abeyance. On September 18, 2012, the Court granted Petitioner's motion, held his petition in abeyance pending exhaustion of additional state remedies, and closed this case for administrative purposes. *See* Order Granting Mot. to Hold Pet. in Abeyance, ECF No. 4.

Petitioner then returned to the state trial court and filed a motion for relief from judgment. He argued that his state and federal rights to a speedy trial were violated and that his trial and appellate attorneys were ineffective. The trial court's successor

determined that it was barred from granting relief on Petitioner's claims about trial counsel and the alleged lack of a speedy trial because the Michigan Court of Appeals had decided those issues on direct appeal. The trial court also stated that trial counsel's decision not to pursue an evidentiary hearing was a strategic decision, which did not constitute ineffective assistance. Finally, the trial court held that appellate counsel was not ineffective for failing to raise a claim about trial counsel's performance, because Petitioner failed to demonstrate that trial counsel's performance was deficient. *See People v. Henderson*, No. 08-1406-FH, Op. and Order (Ingham Cty. Cir. Ct. Apr. 3, 2013). Petitioner moved for reconsideration, but the trial court denied his motion after concluding that his arguments were unpersuasive and that he was presenting the court with issues that the court had previously considered and decided. *See People v. Henderson*, No. 08-1406-FH, Order Denying Def't's Mot. for Reconsideration (Ingham Cty. Cir. Ct. Apr. 30, 2013).

Petitioner appealed the trial court's decision on grounds that (1) the trial court violated Michigan Court Rule 6.508(E) by not reaching the merits of his claims, (2) he was entitled to a remand for a hearing and a merits decision, (3) his constitutional right to a speedy trial was denied, (4) trial counsel was ineffective, (5) appellate counsel was ineffective for not raising these issues on appeal, and (6) structural error occurred. The Michigan Court of Appeals declined to remand Petitioner's case and denied his application for leave to appeal on the basis that Petitioner had failed to establish

entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Henderson*, No. 318404 (Mich. Ct. App. Jan. 23, 2014). On September 5, 2014, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Henderson*, 497 Mich. 853; 852 N.W.2d 177 (2014) (table).

In December of 2014, Petitioner filed another habeas corpus petition in this District. *See Henderson v. Burt*, No. 14-14625 (E.D. Mich. Dec. 8, 2014). The Clerk of the Court randomly assigned the 2014 petition to another judge in this District, but because the 2014 petition challenged the same convictions as the 2012 petition, it was subsequently reassigned to this Court. On December 23, 2014, the Court consolidated the two cases, re-opened this case, amended the caption, and closed the 2014 case. *See* Order of Consolidation, ECF No. 6. Respondent Sherry Burt subsequently filed an answer to the petition, ECF No. 12, and Petitioner filed a reply, ECF No. 14.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposed the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in
         the State court proceedings.

28 U.S.C. § 2254(d).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24

(2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).   In fact,

> "[a] state court's determination that a claim lacks merit precludes federal
> habeas relief so long as 'fairminded jurists could disagree' on the
> correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.
> 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting *Yarborough v.
> Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).
> The state court decision must be "so lacking in justification that there was
> an error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. ——,
> ——, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (internal quotation
> marks omitted).

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).  Additionally, this Court must presume

the correctness of a state court's determination of factual issues unless the petitioner

rebuts the presumption with clear and convincing evidence.  *Holland v. Rivard*, 800 F.3d

224, 242 (6th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384

(2016).

## III. Analysis

### A. Speedy Trial

Petitioner alleges that he was denied his state and federal right to a speedy trial. Petitioner raised this issue in the Michigan Court of Appeals on direct appeal. The Court of Appeals determined that the Michigan statute on which Petitioner relied and the corresponding court rule were not applicable because the statute and rule were limited to state prisoners, and Petitioner was a county detainee at the time. The Court of Appeals also stated that, to the extent Petitioner challenged the delay on constitutional grounds, his argument failed because he did not raise the issue of prejudice.

Petitioner also raised his speedy trial claim in his motion for relief from judgment and the subsequent appeal. The state trial court concluded that it was barred from granting relief because the issue was decided against Petitioner on direct appeal and there had been no retroactive change in the law that undermined the appellate court's decision.

Petitioner contends that the trial court erred by failing to provide a reasoned analysis of his constitutional claim. Petitioner also contends that the delay in trying him was presumptively prejudicial and that it impeded his defense.

### 1. Clearly Established Federal Law

The alleged violation of Petitioner's right to a speedy trial under state law fails because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Petitioner nevertheless did have a federal constitutional right to a speedy trial. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). This right "is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515 (1972).

When determining whether a particular defendant was deprived of his right to a speedy trial, courts must consider and balance the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any prejudice to the defendant. *Id.* at 530. Stated differently, there are four relevant inquiries:

> whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.

*Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citing *Barker*, 407 U.S. at 530).

> [N]one of the four factors identified above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.

*Barker*, 407 U.S. at 533.

**2. Application**

 **a. Length of the Delay**

 "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. at 530. "The length is measured from the earlier of the date of arrest or the date of indictment." *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011). "A one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors." *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017) (citing *Doggett*, 505 U.S. at 652 n.1, and *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005)).

 Petitioner alleges that he surrendered to law enforcement authorities on November 17, 2008, and the record indicates that he was formally arrested on December 8, 2008. He was held in jail until his trial commenced about sixteen months later on March 16, 2010. (Pet. for Writ of Habeas Corpus, ECF No. 9, Argument 1, at 5; Mot. Hr'g, at 3-4, Oct. 19, 2010; *People v. Henderson*, No. 08-001406-FH, Ingham County Cir. Ct. Docket, at 6 and 11.) Because Petitioner was tried more than a year after his arrest, the pretrial delay was presumptively prejudicial, and the Court is required to evaluate the other *Barker* factors.

 **b. Reason for the Delay**

 The second *Barker* factor is the reason for the delay.

> [T]he court considers who is most at fault—the government or the
> defendant. *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003).
> "Governmental delays motivated by bad faith, harassment or attempts to
> seek a tactical advantage weigh heavily against the government." *Id*. at
> 553. Negligence and unexplained delay also weigh against the government,
> albeit less heavily, " 'but nevertheless should be considered since the
> ultimate responsibility for such circumstances must rest with the
> government rather than with the defendant.' " *Id*. at 554 (quoting *Barker*,
> 407 U.S. at 531, 92 S. Ct. 2182). The State bears the burden of explaining
> the cause of the delay. *See* [*United States v. Brown*, 169 F.3d 344, 349 (6th
> Cir. 1999)]; *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987).

*Brown v. Romanowski,* 845 F.3d at 714.

Petitioner's trial initially was set for March 23, 2009. It was subsequently re-scheduled for May 26, 2009 and then June 15, 2009. (*People v. Henderson*, No. 08-001406-FH, Ingham County Cir. Ct. Docket, at 10-11.) The reasons for those delays are unknown, but even assuming that the unexplained delays are attributable to the State, much of the remaining delay in the case was Petitioner's fault.

On June 2, 2009, for example, Petitioner, through counsel, moved for a bill of particulars on count one of the criminal complaint, and he asked for permission to take a polygraph test. The trial court adjourned the trial to the next docket, partly because of Petitioner's request for a polygraph test and partly because the parties were waiting for the results of tests performed on Petitioner pursuant to a Michigan statute to determine whether Petitioner had any STI's. (Mot. Hr'g Tr., at 3-7, June 2, 2009.)

Subsequent trial dates set for July, September , and October of 2009, came and went, and on October 23, 2009, Petitioner requested additional tests to determine whether

he had contracted the particular STI that the complainant had contracted.  After Petitioner waived any objection to the delay in trying him, the trial court adjourned the trial. (Pretrial Conference, at 3-6, Oct. 23, 2009.)

The trial date was re-scheduled for Monday, November 30, 2009, but prior to that date, Petitioner renewed his motion for a bill of particulars and requested additional discovery.   At a hearing on the motions, the trial court adjourned the trial to the following January to accommodate Petitioner's request for discovery.  (Mot. Hr'g at 3-13, Nov. 25, 2009.)  Then, Petitioner became unhappy with his trial attorney, and the attorney was permitted to withdraw from the case on January 11, 2010.

In early February of 2010, a different attorney was appointed to represent Petitioner, and on the next date set for trial (February 16, 2010), the new attorney asked for an adjournment of the trial so that he could interview witnesses.  Although Petitioner informed the trial court that counsel was incompetent and that he disagreed with the trial court's proposal to adjourn the trial, he also stated that he did not want to go ahead with the trial.  The trial court refused to replace the attorney and then adjourned the trial to mid-March 2010.  (Hr'g Tr. at 3-13, Feb. 16, 2010.)  The trial commenced on March 16, 2010.

Petitioner's motions resulted in adjournments of the trial date for about nine months:  from mid-June 2009 to mid-March of 2010.  "When a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim." *Young*,

12

657 F.3d at 415 (citing *United States v. Loud Hawk*, 474 U.S. 302, 316–17 (1986)

(quoting *United States v. Auerbach*, 420 F.2d 921, 924 (5th Cir. 1969)).  Here, more than

half of the delay in this case is attributable to Petitioner, leaving only about seven months

of the delay attributable to the State.  The second *Barker* factor weighs against Petitioner

and in favor of the State.

### c.  Assertion of the Right

The third *Barker* factor is whether the defendant asserted his right to a speedy

trial.  Petitioner waived his right to a speedy trial at the pretrial conference on October 23,

2009, and he did not complain about the delay in trying him until after he was tried and

convicted.  The third factor, therefore, weighs in favor of the State.

### d.  Prejudice

The fourth factor is prejudice to the defendant.   The Sixth Circuit has pointed out

> that "presumptively prejudicial" for purposes of triggering the *Barker* four-
> factor inquiry is different from "presumptively prejudicial" for purposes of
> assessing the prejudice prong.  The first only requires that the delay have
> approached one year.  The latter concerns whether the delay was excessive.

*Maples*, 427 F.3d at 1030.  "In the Sixth Circuit, no presumption has been found where

delay due to government fault is considerably less than that in [*United States v. Graham*,

128 F.3d 372 (6th Cir. 1997) (eight years)] or in [*United States v. Brown*, 169 F.3d 344

(6th Cir. 1999) (five and a half years)], or where the government can persuasively rebut

the presumption by showing that the delay did not impair the defendant's defense." *Id*. at 1031 (collecting cases).

The pretrial delay in Petitioner's case (about sixteen months) was much less than that in *Graham* or *Brown*. Furthermore, Petitioner has not shown that he was actually prejudiced by the delay. He mentions in his habeas petition that prejudice can result from distortions in memories (Pet. for Writ of Habeas Corpus, Argument 1 at 6), but the defense witnesses appeared to have no trouble remembering where Petitioner was on the afternoon of September 20, 2008, the date and time of the second assault on the complainant.

In his post-conviction motion in state court, Petitioner claimed prejudice by suggesting that the complainant accused him of criminal sexual conduct to protect someone else who must have given her the STI. The complainant, however, reported the assaults and identified Petitioner as her assailant less than one month after the second assault and before she was tested for STI's. Petitioner turned himself in to the police a few days later. The subsequent delay in trying Petitioner was not the complainant's fault.

Petitioner also alleged in his post-conviction motion that, during the pretrial delay, Crystal Nequist became engaged and could not admit at Petitioner's trial that she previously had unprotected sex with Petitioner and did not become infected with an STI. The trial court, however, precluded Petitioner from pointing out that the complainant had contracted an STI. (Trial Tr. Vol. I, at 9-13, Mar. 16, 2010.) Testimony that Ms. Nequist

14

had unprotected sex with Petitioner in 2008 and did not become infected with an STI would have been meaningless in the absence of any evidence that the complainant had contracted an STI. The Court concludes that Petitioner has failed to establish any prejudice as a result of the delay in trying him.

To summarize, the delay in trying Petitioner was long enough to trigger the other three *Barker* factors, but the delay was largely the result of Petitioner's motions and his dissatisfaction with his first attorney. Additionally, Petitioner did not raise the issue until after trial, and he has not shown that the delay impaired his defense. The first *Barker* factor weighs in Petitioner's favor, but the other three factors weigh in the State's favor and lead to the conclusion that Petitioner's Sixth Amendment right to a speedy trial was not violated. The Michigan Court of Appeals reasonably concluded that Petitioner's constitutional right to a speedy trial failed. Habeas relief is not warranted on Petitioner's speedy trial claim.

## B. Trial Counsel

Petitioner alleges next that he was denied his right to effective assistance of trial counsel. He claims that trial counsel: (1) failed to understand that Petitioner's lack of an STI was probative of his innocence, failed to provide legal advice beyond recommending that Petitioner take a deal, and failed to adequately investigate the options, defenses, and leads that Petitioner provided; (2) failed to use Petitioner's medical records, which showed he was not infected with an STI, and other documents, which explained the

15

nature of the complainant's STI; (3) failed to assert a viable defense theory, failed to discover that the complainant's brother did not provide a verbatim statement, and failed to form a reasonable cross-examination strategy; (4) failed to request a hearing regarding the interview techniques used on the complainant and the other young witnesses; (5) failed to consult a medical doctor to ascertain the importance of Petitioner's lack of an STI and failed to introduce evidence that the complainant had two STI's; (6) failed to interview two alibi witnesses; (7) failed to use effective cross-examination to elicit testimony about the complainant's two STI's and failed to produce three women who could have testified that they had unprotected sex with Petitioner and did not develop STI's; and (8) failed to conduct an effective cross-examination of the complainant's aunt. Petitioner also contends that the cumulative effect of counsel's errors prevented counsel from making an effective closing argument.

### 1. Clearly Established Federal Law

"There is no dispute that the clearly established federal law here is *Strickland v. Washington*," 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). To prevail on his claim, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687. The "deficient performance" prong of this test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is not reliable." *Id.* There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quoting *Strickland*, 466 U.S. at 693).

> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Etherton*, 136 S. Ct. at 1151. Given this highly deferential standard, the Court concludes for the following reasons that defense counsel was not ineffective.

**2. Application**

**a. Failure to Introduce Evidence about STI's**

Several of Petitioner's claims about trial counsel pertain to the complainant's STI's and Petitioner's lack of an STI.  Petitioner alleges that his attorney failed to understand that Petitioner's clean bill of health was highly probative of his innocence of the crime.  He asserts that trial counsel should have:  introduced evidence that the complainant had two STI's; produced or cross-examined witnesses about the complainant's STI's and the other witnesses lack of an STI; used Petitioner's medical records to show that Petitioner was not infected; and consulted a medical doctor to ascertain the importance of Petitioner's lack of infection.

This issue arose on the first day of trial when the prosecutor moved to preclude defense counsel from introducing evidence that the complainant had an STI.  Defense counsel argued in favor of allowing the evidence to be admitted on the basis that the complainant's infection was the motivation for her accusations against Petitioner. Defense counsel pointed out that, according to his research, the infection does not go away unless treated, and jail records indicated that Petitioner was not treated for any diseases.  The trial court granted the prosecutor's request and ruled that, without any additional foundation showing that the infection stays with a person unless he or she is treated, the evidence was too remote to be admitted.  (Trial Tr. Vol. I, at 9-13, Mar. 16, 2010.)

18

Given the trial court's ruling, defense counsel was not ineffective for failing to introduce evidence, or question witnesses, about STI's. Although defense counsel could have attempted to lay a better foundation to support his request to admit the evidence, the prosecutor stated that she had consulted an expert in microbiology who informed her that the STI which the complainant had contracted could be transmitted not only sexually, but through a towel that was used by an infected person. According to the prosecutor, the microbiologist also explained to her that men often are more asymptomatic than women, men frequently have false negative results when tested and can transmit the infection even if they test negative, and the infection can be cured easily with antibiotics. *Id.* at 10.

In light of this information, evidence about the complainant's STI's and Petitioner's lack of an STI would have had limited probative value and could have been detrimental to Petitioner. The trial court reasonably concluded on post-conviction review that counsel's decision not to pursue the issue was a strategic decision.

The Sixth Circuit Court of Appeals reached the same conclusion in a similar case where the habeas petitioner alleged that defense counsel was ineffective for failing to adequately present information about an STI. The Sixth Circuit concluded from the record that defense counsel "reasonably determined his time was better spent on other defense theories . . . ." *See Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012). This Court concludes that defense counsel was not ineffective for failing to introduce evidence about STI's.

### 2. Failure to Assert a Viable Defense Theory

Petitioner alleges that trial counsel failed to discover that the complainant's young brother did not provide a verbatim statement, which could have been used to determine whether his trial testimony was consistent with his statement and with other testimony. The brother, however, was only eight years old at the time of the incident in question, and he was not required to provide a written statement about his observations of Petitioner and the complainant. Furthermore, to his credit, defense counsel pointed out during closing arguments that the brother's testimony was somewhat inconsistent with the complainant's testimony. (Trial Tr. Vol. III, at 120-21, Mar. 19, 2010.)

Petitioner also alleges that trial counsel failed to assert a viable defense. But defense counsel had a difficult case to defend, given the complainant's testimony, which the trial court described at sentencing as "persuasive and credible," and the corroborating testimony of the complainant's mother and her young relatives. The examining nurse, moreover, testified that the complainant had said Petitioner penetrated her with his penis, and a police officer testified that, based on the details provided by the complainant, she thought the complainant was the victim of a sexual assault.

Defense counsel did present four witnesses, who indicated that Petitioner could not have committed the crimes. Defense counsel also insinuated that the complainant

was not honest or credible, and he argued to the jury that certain contradictions in the witnesses' testimony warranted skepticism. These were reasonable trial tactics, which did not amount to ineffective assistance.

### 3. Interview Techniques

Next, Petitioner alleges that defense counsel should have requested a hearing regarding the interview techniques used on the complainant and the other young witnesses. Petitioner contends that state law requires law enforcement officials to take precautions when questioning young witnesses to ensure they are interviewed in a non-adversarial manner. He maintains that the complainant's young brother and young cousin were tainted witnesses and that defense counsel should have requested a hearing "to unravel their false corroborative testimony."

There is no basis in the record for concluding that suggestive techniques were used on the young witnesses or that their testimony was false. The complainant was not subjected to multiple forensic interviews, which could have tainted her version of the facts; rather, she disclosed the sexual assaults to her mother and then spoke with a police officer and the nurse who examined her. She was unwavering in her testimony at trial, and it appears that her testimony was consistent with her pretrial disclosures.

As for the other young witnesses, Petitioner has failed to show that the lack of a hearing on whether the police used suggestive interview techniques on them prejudiced his defense. Defense counsel elicited testimony from the complainant's young cousin

that, although the child may have told a detective he saw Petitioner and the complainant

having sex (Trial Tr. Vol. II, at 112, Mar. 18, 2010), the child, in fact, did not see any

sexual activity (*id*. at 116).  Defense counsel was able to show on cross-examination of

the other young witness that his testimony was inconsistent with the complainant's

testimony.  (*Id*. at 129.)  The Court concludes that defense counsel performed adequately

insofar as the young witnesses were concerned, and his failure to request a hearing on

whether the police used proper interview protocol on the witnesses did not prejudice

Petitioner.

### 4.  Failure to Interview Alibi Witnesses

Petitioner alleges that defense counsel failed to interview two alibi witnesses who

could have testified that no crime occurred.  Counsel did produce four witnesses who

indicated that Petitioner was not present at the time of the September assault or was not

alone with the complainant that day.  Petitioner has not demonstrated that the two

additional witnesses (the girlfriend of the complainant's older cousin and the boyfriend or

husband of a neighbor) would have been willing and able to testify in his defense.  It

further appears that both of the witnesses would have given cumulative testimony.

Petitioner has failed to show that, but for counsel's failure to interview or produce

the two additional alibi witnesses, there is a substantial likelihood the result of the trial

would have been different.  Thus, counsel's omissions did not prejudice Petitioner.

**5. The Cross-Examination of the Complainant's Aunt**

Petitioner asserts that defense counsel made a mistake when cross-examining the complainant's aunt, Ms. L. McGuire. Defense counsel asked Ms. McGuire about a night in August of 2008 when she went upstairs in her home and saw Petitioner and the complainant in one of her bedrooms. Petitioner was sitting on the bed, and the complainant was sitting on the floor. Counsel's next question was, "What were they doing from what you saw?" Ms. McGuire responded, "I asked [the complainant] what was she doing up [t]here and she – ." Ms. McGuire was interrupted at that point by the prosecutor who made a hearsay objection. The trial court then excused the jury, and Ms. McGuire explained that the complainant had said she and Petitioner were merely talking. Defense counsel argued in favor of admitting Ms. McGuire's response on the basis that the response was not admitted for the truth of the matter. The trial court, however, agreed with the prosecutor that the comment was classic hearsay, which was inadmissible. (Trial Tr. Vol. III, at 47-50, Mar. 19, 2010.)

Petitioner alleges that defense counsel lost his focus by arguing that Ms. McGuire's testimony was not admitted for the truth of the matter. Petitioner maintains that defense counsel should have asked the trial court to direct McGuire to testify about what she saw and not what she heard.

Although Petitioner contends that counsel's omission prevented the jury from learning what Ms. McGuire saw, defense counsel managed to elicit this information when

the jury returned to the courtroom. He asked Ms. McGuire whether Petitioner and the complainant had been fully dressed when she observed them and whether Ms. McGuire was aware of anything inappropriate going on. Ms. McGuire answered that both Petitioner and the complainant were fully dressed at the time and that there was no indication something inappropriate had occurred. (*Id.* at 50-51.) Counsel's cross-examination of Ms. McGuire did not amount to ineffective assistance.

### 6. The Cumulative Effect of Counsel's Errors

Petitioner's final argument about trial counsel is that the cumulative effect of his errors prevented him from making an effective closing argument. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). And "because the individual claims are all essentially meritless, [Petitioner] cannot show that the cumulative error[s] violated his constitutional rights." *Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)).

## C. Appellate Counsel

Petitioner claims that appellate counsel was ineffective because she failed to raise viable claims about trial counsel's performance, she raised the speedy trial claim under the wrong statute in the Michigan Court of Appeals, and she abandoned that claim in the Michigan Supreme Court. Petitioner first raised this issue in his motion for relief from

judgment. The trial court concluded that trial counsel's performance was not deficient and, therefore, appellate counsel's failure to raise a claim about trial counsel did not fall below an objective standard of reasonableness.

The proper standard for evaluating Petitioner's claim about appellate counsel is the one enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues. *Id.* (citing *Strickland*, 466 U.S. at 687-91, 694). The Court is also mindful that

> [i]ndigent appellants have no constitutional right to compel their appointed attorneys to make every nonfrivolous argument on appeal. *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Tactical choices about which claims to raise on appeal "are properly left to the sound professional judgment of counsel. . . ." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751–52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (quoted in *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). "[A]n appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (citing *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)). A "dead-bang winner" is an issue which was obvious from the trial record, see e.g., *Matire v.*

> *Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to
> raise issue which " 'was obvious on the record, and must have leaped out
> upon even a casual reading of [the] transcript' was deficient performance),
> and one which would have resulted in a reversal on appeal." *Id.*

*Meade v. Lavigne*, 265 F. Supp. 2d 849, 869–70 (E.D. Mich. 2003).

The Michigan Court of Appeals determined on direct appeal that the Michigan statute cited by appellate counsel in her appellate brief did not apply to Petitioner. But even assuming that appellate counsel's performance was deficient, the deficient performance did not prejudice Petitioner because his speedy trial claim was not a "dead-bang winner;" it lacks merit for the reasons given above.

As for appellate counsel's failure to argue that trial counsel was ineffective, the underlying claims about trial counsel also lack merit. *See, supra*, Section III.B. Because trial counsel performed adequately, the Court's "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

The state trial court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland* or *Robbins*. Thus, habeas relief is not warranted on Petitioner's claim about appellate counsel.

## D. Cumulative Effect of Errors

In his fourth and final claim, Petitioner alleges that the numerous errors in his case had a cumulative impact on his trial and appeal. Although Respondent argues that this

claim is procedurally defaulted because Petitioner did not exhaust state remedies for the claim and no longer has a state remedy to exhaust, "a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997).

Furthermore, Petitioner's contention that the cumulative effect of errors deprived him of a fair trial and a fair appeal is not a cognizable claim on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). And there were no constitutional errors that could be cumulated to deprive Petitioner of a fair trial or a fair appeal. The Court therefore declines to grant relief on Petitioner's fourth claim.

## IV. Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The decisions certainly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court therefore denies Petitioner's application for the writ of habeas corpus.

## V.  Certificates of Appealability
### and
### Leave to Proceed *In Forma Pauperis* on Appeal

Petitioner may not appeal this Court's opinion and order denying his habeas petition without a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.  The Court therefore declines to issue a certificate of appealability. The Court nevertheless will allow Petitioner to proceed *in forma pauperis* on appeal, because an appeal from this decision could be taken in good faith.  28 U.S.C. § 1915(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: April 11, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on April 11, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

28